AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

ENTERED
LODGED ——— RECEIVED

JUN 13 2019

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                         DEPUTY

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) | Case No.    MJ19 – 260 |
| The subject premises at 33020 10th Avenue SW, Unit Q201, Federal Way, WA 98023 and the person of Christopher Newcombe | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Subject Premises and Person as further described in Attachment A, which is attached hereto incorporated here in by reference

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

✓ See attached Affidavit continued on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

SA George Long, HSI
*Printed name and title*

⊙ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:      06/13/2019                          _____
                                                *Judge's signature*

City and state:  SEATTLE, WASHINGTON           PAULA L. MCCANDLIS, United States Magistrate Judge
                                                *Printed name and title*

## ATTACHMENT A

### Description of the Property to be Searched

a.      The physical address of the SUBJECT PREMISES is 33020 10 Avenue SW, Unit Q201 in Federal Way, Washington 98023. The SUBJECT PREMISES is more fully described as a condominium located on the lower level of building "Q". Building Q is located in the center of a large condominium complex. It is gray in color and has white trim. Four garage doors are located on the east side of the building and windows for the various residences are located above the garage doors. A large "Q" appears on the east side of the building. Entrances to the four residences located in building Q are on the north and south side of the building. Unit Q201 is located on the south side of building Q. A green door that provides entry into the residence has a sign attached to it that reads "201".



ATTACHMENT A - 1
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The search is to include all rooms, attics, basements, or other areas located in Unit Q201, any parking spaces, garages, or storage spaces attached to or specifically assigned to Unit Q201, as well as any digital device(s) found therein.

Description of Person to be Searched

The person to be searched, CHRISTOPHER SCOTT NEWCOMBE, is a white male who was born on XX/XX/1984. He is approximately 5'10" tall and weighs approximately 175 pounds.



ATTACHMENT A - 2
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES and on the person of CHRISTOPHER SCOTT NEWCOMBE.

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.      Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7.      Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8.      Any non-digital recording devices and non-digital media capable of storing images and videos.

ATTACHMENT B - 1
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9.      Digital devices and/or their components, which include, but are not limited to:

a.      Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above, including but not limited to computers, digital cameras, and smart phones;

b.      Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

c.      Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

d.      Any documentation, operating logs and reference manuals regarding the operation of the digital device or software;

e.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.      Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.      Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

10.     Evidence of who used, owned or controlled any seized digital device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

11.     Evidence of malware that would allow others to control any seized digital device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

ATTACHMENT B - 2
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  as evidence of the presence or absence of security software designed to detect malware;
2  as well as evidence of the lack of such malware;

3      12.     Evidence of the attachment to the digital device(s) of other storage devices
4  or similar containers for electronic evidence;

5      13.     Evidence of counter-forensic programs (and associated data) that are
6  designed to eliminate data from a digital device;

7      14.     Evidence of times the digital device(s) was used;

8      15.     Any other ESI from the digital device(s) necessary to understand how the
9  digital device was used, the purpose of its use, who used it, and when.

10
11  **The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such**
12  **digital devices constitute instrumentalities of the criminal activity described above,**
13  **but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT B - 3
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**AFFIDAVIT**

STATE OF WASHINGTON

COUNTY OF KING

| ss

---

I, George Long, being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUNDS**

1.      I am a Special Agent (SA) with the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Special Agent in Charge (SAC), Seattle, Washington.  I have been employed as an HSI agent since September 2005.  HSI is responsible for enforcing customs and immigration laws, and federal criminal statutes of the United States.   As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

2.      I am a graduate of the Federal Law Enforcement Training Center (FLETC), the ICE Special Agent Training Program, and have received further specialized training in investigating child pornography and child exploitation crimes.  I have also had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256(8)).  I have participated in the execution of previous search warrants, which involved child exploitation and/or child pornography offenses, and the search and seizure of computers, related peripherals, and computer media equipment.  I am have worked with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.  Before joining HSI, I was employed by the Arizona Department of Public Safety as a State Trooper for approximately nine years.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 1
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

3.     I am submitting this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 33020 10th Avenue SW, Unit Q201, Federal Way, Washington 98023 (the "SUBJECT PREMISES"), and the person of Christopher NEWCOMBE (the "SUBJECT PERSON"), more fully described in attachment A to this affidavit, for the property and items described in attachment B to this affidavit.

4.     The warrant would authorize a search of the SUBJECT PREMISES and the SUBJECT PERSON, and the seizure of items listed in attachment B, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography).

5.     The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

6.     Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation. I have set forth only the facts I believe are relevant to the determination of probable cause to believe evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) will be found in the SUBJECT PREMISES and on the person of CHRISTOPHER SCOTT NEWCOMBE.

**SUMMARY OF PROBABLE CAUSE**

7.     From my training and experience, I know that Kik Messenger, also known as KIK, is an instant messenger mobile application (app) for mobile devices from Kik Interactive.  KIK is available free of charge on iOS, Android, and Windows Phone

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 2
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 operating systems.  Among its features, KIK permits users to engage in one-on-one or
2 group chats, as well as share image and video files.  KIK is based and headquartered in
3 Waterloo, Ontario, Canada.

4      8.     From my training and experience, I am aware that certain KIK users use
5 KIK's features to traffic in images and videos of child pornography.  In order to combat
6 this activity, KIK uses PhotoDNA, a hash matching system developed by Microsoft, to
7 identify users who are sharing child exploitation material using KIK's services.  A hash
8 value can be analogized to a "digital fingerprint."  The probability that any two files will
9 have the same hash value is extremely low, meaning that when two files have the same
10 hash value, it is virtually certain that they are identical.

11      9.     KIK utilizes PhotoDNA, in addition to other search software, to run a hash
12 value check against every file sent within KIK, including those sent as part of private
13 conversations.  When a user sends a file with a hash value that matches a known child
14 sexual abuse material hash value, the account is banned.  The KIK Trust and Safety Team
15 receives a daily report of all such hash matches.  It has a mandatory obligation to report
16 these matches to the Royal Canadian Mounted Police (RCMP).  With each report, KIK
17 provides some or all of the following information:

18      • Subscriber data associated with the reported user;
19      • Full conversation log that exists on the reporter's device, including timestamps
20         and Internet Protocol (IP) addresses, as well as text content;
21      • Images/Videos associated

22 **SUMMARY OF INVESTIGATION**

23      10.     HSI routinely investigates child exploitation leads received from the
24 RCMP. These include leads resulting from the KIK reports to the RCMP described
25 above. KIK reports to the RCMP all instances where its security team has discovered
26 child pornography exchanged or discussed via the KIK application. Included in leads,
27 there is normally profile data of the user, any text transcript if applicable, and any files
28 shared, if any. These leads are then forwarded to HSI Headquarters who distributes the

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 3
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  leads to the HSI field offices depending on the geolocation of the associated Internet
2  Protocol (IP) address.

3      11.    In November 2018, HSI Seattle received information regarding KIK user
4  "A.SJONES" (the SUBJECT ACCOUNT).  KIK reported the SUBJECT ACCOUNT
5  shared a file, with the hash value of
6  58AC284DF6006952ABC4A1B789BCD5A3932294A2 (the SUBJECT FILE) on or
7  about November 3, 2018, at approximately 11:37:33 Universal Coordinated Time (UTC),
8  from the IP address 67.171.45.191 (the SUBJECT IP).  The hash value of the SUBJECT
9  FILE was identified via PhotoDNA as a child exploitation image hash file. The
10  SUBJECT FILE was viewed by KIK and verified to be a child exploitation image.  The
11  SUBJECT FILE was reported to have been uploaded from a device that uses an Apple
12  Operating System (iOS).

13      12.    Subscriber information provided by KIK indicates the SUBJECT
14  ACCOUNT was created on July 8, 2017.  The user identified his/her first name as "A.S.",
15  his/her last name as "Jones", and his/her date of birth (DOB) as XX/XX/1984. IP logs
16  included with the subscriber information revealed that between October 4, 2018, and
17  November 3, 2018, the SUBJECT ACCOUNT regularly accessed the KIK application
18  via the SUBJECT IP. Subsequent investigation identified Comcast as the internet service
19  provider to whom the SUBJECT IP is assigned.

20      13.    I viewed the SUBJECT FILE KIK provided and describe it as follows:

21  This is a color photograph that depicts three prepubescent Caucasian male children
22  engaged in sex acts.  A fully nude prepubescent Caucasian male is lying on the
23  ground, on his back and his legs are elevated.  His elbows are behind his knees
   holding his legs in the air. His hips are elevated, exposing his buttocks and penis.
24  A second partially nude prepubescent Caucasian male is kneeling over this first
   child's face, holding his feet.  That child's underwear is pulled down, exposing his
25  penis, which is inserted in the first child's mouth.  A third fully nude prepubescent
26  Caucasian male is kneeling at first boy's buttocks, inserting his penis into the first
   boy's anus.  The faces of all three boys are obscured, as well as the background.
27  The three children are small in stature and lack visible pubic hair/muscle
28  development.  I estimate the all three are under the age of ten.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 4
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

14.     A DHS summons was served to Comcast to obtain subscriber information for the accounts registered to or associated with the SUBJECT IP on or about October 4, 2018 at 21:42:23 UTC, through November 8, 2018 at 14:29:51 UTC.

15.     The Comcast Legal Response Center identified the subscriber as follows:

| | |
|---|---|
| Subscriber Name: | CHRISTOPHER NEWCOMBE |
| Service Address: | 33020 10TH AVE SW APT Q201 |
| | FEDERAL WAY, WA 980235049 |
| Bill to Name: | MR CHRISTOPHER NEWCOMBE |
| Billing Address: | 33020 10TH AVE SW |
| | UNIT Q201 |
| | FEDERAL WAY, WA 980235049 |
| Telephone #: | (253) 709-1953 |
| Type of Service: | High Speed Internet Service |
| Account Number: | 8498340162418570 |
| Start of Service: | 8/5/2017 |
| Account Status: | Active |
| IP Assignment: | Dynamically Assigned |
| Current IP: | See attached |
| E-mail User Ids: | csnukm1 |

16.     Checks conducted in law enforcement databases revealed CHRISTOPHER SCOTT NEWCOMBE was issued Washington driver license number on January 30, 2019. NEWCOMBE'S DOB was identified as XX/XX/1984, and his address as 33020 10th Avenue SW, Unit Q201, Federal Way, Washington.  Notably, the DOB listed on the driver license matched the DOB listed on the SUBJECT ACCOUNT.

17.     A social media search for information related to NEWCOMBE suggests that he has been working as an elementary school teacher in the Puget Sound region since 2016.

18.     Information obtained from the Cascade Elementary School in Renton, Washington, shows NEWCOMBE is currently employed as a music teacher at the school. In his position as a teacher, CHRISTOPHER NEWCOMBE has unsupervised access to children.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 5
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

19.   On May 28, 2019, I conducted surveillance of the SUBJECT PREMISES. I saw a red door mat outside the SUBJECT PREMISES that read, "NEWCOMBE". At approximately 4:20 PM, I saw NEWCOMBE arrive at the SUBJECT PREMISES driving a gray Chevrolet Malibu that displayed Washington license plate BFF1634. I saw a garage door located on the east side of the building open, NEWCOMBE park the vehicle in the garage, and the door close behind the vehicle.

20.   Checks conducted in law enforcement databases revealed Washington license plate BFF1634 is registered to a 2007 Chevrolet Malibu owned by P.N. and CHRISTOPHER S NEWCOMBE at 33020 10 Avenue SW, Unit Q201, Federal Way, Washington.

21.   P.N., DOB XX/XX/1961, is a relative of NEWCOMBE. Records checks show that P.N. resides at another home in Federal Way, Washington. Based on my investigation today, it appears that NEWCOMBE lives alone.

22.   A search of the King County Department of Assessments website revealed the SUBJECT PREMISES is owned by CHRISTOPHER SCOTT NEWCOMBE. The website identified the SUBJECT PREMISES as having a garage.

## TECHNICAL BACKGROUND

23.   Based on my training and experience, when an individual communicates through the Internet, the individual leaves an IP address which identifies the individual user by account and ISP (as described above). When an individual is using the Internet, the individual's IP address is visible to administrators of websites they visit. Further, the individual's IP address is broadcast during most Internet file and information exchanges that occur.

24.   Based on my training and experience, I know that most ISPs provide only one IP address for each residential subscription. I also know that individuals often use multiple digital devices within their home to access the Internet, including desktop and laptop computers, tablets, and mobile phones. A device called a router is used to connect multiple digital devices to the Internet via the public IP address assigned (to the

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 6
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    subscriber) by the ISP.  A wireless router performs the functions of a router but also
2    includes the functions of a wireless access point, allowing (wireless equipped) digital
3    devices to connect to the Internet via radio waves, not cables.  Based on my training and
4    experience, today many residential Internet customers use a wireless router to create a
5    computer network within their homes where users can simultaneously access the Internet
6    (with the same public IP address) with multiple digital devices.

7        25.    Based on my training and experience and information provided to me by
8    computer forensic agents, I know that data can quickly and easily be transferred from one
9    digital device to another digital device.  Data can be transferred from computers or other
10   digital devices to internal and/or external hard drives, tablets, mobile phones, and other
11   mobile devices via a USB cable or other wired connection.  Data can also be transferred
12   between computers and digital devices by copying data to small, portable data storage
13   devices including USB (often referred to as "thumb") drives, memory cards (Compact
14   Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

15       26.    As outlined above, residential Internet users can simultaneously access the
16   Internet in their homes with multiple digital devices.  Also explained above is how data
17   can quickly and easily be transferred from one digital device to another through the use
18   of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage
19   devices (USB drives, memory cards, optical discs).  Therefore, a user could access the
20   Internet using their assigned public IP address, receive, transfer or download data, and
21   then transfer that data to other digital devices, which may or may not have been
22   connected to the Internet during the date and time of the specified transaction.

23       27.    Based on my training and experience, I have learned that the computer's
24   ability to store images and videos in digital form makes the computer itself an ideal
25   repository for child pornography.  The size of hard drives used in computers (and other
26   digital devices) has grown tremendously within the last several years.  Hard drives with
27   the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store
28   thousands of images and videos at very high resolution.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 7
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

28.     Based on my training and experience, and information provided to me by other law enforcement officers, I know that people tend to use the same user names across multiple accounts and email services.

29.     Based on my training and experience, collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by companies such as Google, Yahoo, Apple, and Dropbox, among others. The online services allow a user to set up an account with a remote computing service that provides email services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

30.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" and history files of the browser application used. A forensic examiner often can recover evidence suggesting whether a computer contains wireless software, and when certain files under investigation were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

31.     Based on my training and experience, I have learned that producers of child pornography can produce image and video digital files from the average digital camera, mobile phone, or tablet. These files can then be easily transferred from the mobile device to a computer or other digital device, using the various methods described above. The

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 8
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 digital files can then be stored, manipulated, transferred, or printed directly from a
2 computer or other digital device.  Digital files can also be edited in ways similar to those
3 by which a photograph may be altered; they can be lightened, darkened, cropped, or
4 otherwise manipulated.  As a result of this technology, it is relatively inexpensive and
5 technically easy to produce, store, and distribute child pornography.  In addition, there is
6 an added benefit to the child pornographer in that this method of production is a difficult
7 trail for law enforcement to follow.

8     32.    As part of my training and experience, I have become familiar with the
9 structure of the Internet, and I know that connections between computers on the Internet
10 routinely cross state and international borders, even when the computers communicating
11 with each other are in the same state.   Individuals and entities use the Internet to gain
12 access to a wide variety of information; to send information to, and receive information
13 from, other individuals; to conduct commercial transactions; and to communicate via
14 email.

15     33.    Based on my training and experience, I know that cellular mobile phones
16 (often referred to as "smart phones") have the capability to access the Internet and store
17 information, such as images and videos.  As a result, an individual using a smart phone
18 can send, receive, and store files, including child pornography, without accessing a
19 personal computer or laptop.  An individual using a smart phone can also easily connect
20 the device to a computer or other digital device, via a USB or similar cable, and transfer
21 data files from one digital device to another.  Moreover, many media storage devices,
22 including smartphones and thumb drives, can easily be concealed and carried on an
23 individual's person and smartphones and/or mobile phones are also often carried on an
24 individual's person.

25     34.    As set forth herein and in Attachment B to this Affidavit, I seek permission
26 to search for and seize evidence, fruits, and instrumentalities of the above-referenced
27 crimes that might be found at the SUBJECT PREMISES or on the SUBJECT PERSON,
28 in whatever form they are found.  It has been my experience that individuals involved in

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 9
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   child pornography often prefer to store images of child pornography in electronic form.
2   The ability to store images of child pornography in electronic form makes digital devices,
3   examples of which are enumerated in Attachment B to this Affidavit, an ideal repository
4   for child pornography because the images can be easily sent or received over the Internet.
5   As a result, one form in which these items may be found is as electronic evidence stored
6   on a digital device.

7        35.     Based upon my knowledge, experience, and training in child pornography
8   investigations, and the training and experience of other law enforcement officers with
9   whom I have had discussions, I know that there are certain characteristics common to
10  individuals who have a sexualized interest in children and depictions of children:

11              a.      They may receive sexual gratification, stimulation, and satisfaction
12  from contact with children; or from fantasies they may have viewing children engaged in
13  sexual activity or in sexually suggestive poses, such as in person, in photographs, or other
14  visual media; or from literature describing such activity.

15              b.      They may collect sexually explicit or suggestive materials in a
16  variety of media, including photographs, magazines, motion pictures, videotapes, books,
17  slides, and/or drawings or other visual media.  Such individuals often times use these
18  materials for their own sexual arousal and gratification.  Further, they may use these
19  materials to lower the inhibitions of children they are attempting to seduce, to arouse the
20  selected child partner, or to demonstrate the desired sexual acts.  These individuals may
21  keep records, to include names, contact information, and/or dates of these interactions, of
22  the children they have attempted to seduce, arouse, or with whom they have engaged in
23  the desired sexual acts.

24              c.      They often maintain any "hard copies" of child pornographic
25  material that is, their pictures, films, video tapes, magazines, negatives, photographs,
26  correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of
27  their home or some other secure location.  These individuals typically retain these "hard
28  copies" of child pornographic material for many years, as they are highly valued.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 10
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

d. Likewise, they often maintain their child pornography collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, often at the individual's residence or some otherwise easily accessible location, to enable the owner to view the collection, which is valued highly.

e. They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g. E-mail itself provides a convenient means by which individuals can access a collection of child pornography from any computer, at any location with Internet access. Such individuals therefore do not need to physically carry their collections with them but rather can access them electronically. Furthermore, these collections can be stored on email "cloud" servers, which allow users to store a large amount of material at no cost, without leaving any physical evidence on the users' computer(s).

36. In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 11
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  easily discoverable and accessible online for future viewing and self-gratification. I
2  know that, regardless of whether a person discards or collects child pornography he/she
3  accesses for purposes of viewing and sexual gratification, evidence of such activity is
4  likely to be found on computers and related digital devices, including storage media, used
5  by the person. This evidence may include the files themselves, logs of account access
6  events, contact lists of others engaged in trafficking of child pornography, backup files,
7  and other electronic artifacts that may be forensically recoverable.

8      37.    Given the above-stated facts, and based on my knowledge, training and
9  experience, along with my discussions with other law enforcement officers who
10  investigate child exploitation crimes, I believe that NEWCOMBE is the owner of the
11  SUBJECT ACCOUNT, likely has a sexualized interest in children and depictions of
12  children, and that evidence of child pornography is likely to be found on digital media
13  devices, including mobile and/or portable digital devices found at the SUBJECT
14  PREMISES or on the SUBJECT PERSON.

15      38.    Based on my training and experience, and that of computer forensic agents
16  that I work and collaborate with on a daily basis, I know that every type and kind of
17  information, data, record, sound or image can exist and be present as electronically stored
18  information on any of a variety of computers, computer systems, digital devices, and
19  other electronic storage media. I also know that electronic evidence can be moved easily
20  from one digital device to another. As a result, I believe that electronic evidence may be
21  stored on any digital device present at the SUBJECT PREMISES or on the SUBJECT
22  PERSON.

23      39.    Based on my training and experience, and my consultation with computer
24  forensic agents who are familiar with searches of computers, I know that in some cases
25  the items set forth in Attachment B may take the form of files, documents, and other data
26  that is user-generated and found on a digital device. In other cases, these items may take
27  the form of other types of data - including in some cases data generated automatically by
28  the devices themselves.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 12
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

40.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe that if digital devices are found in the SUBJECT PREMISES or on the SUBJECT PERSON, there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a.     Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b.     Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 13
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 stored (computer) data, and to ensure accuracy and completeness of such data and to

2 prevent loss of the data either from accidental or programmed destruction, it is necessary

3 to conduct a forensic examination of the computers.  To effect such accuracy and

4 completeness, it may also be necessary to analyze not only data storage devices, but also

5 peripheral devices which may be interdependent, the software to operate them, and

6 related instruction manuals containing directions concerning operation of the computer

7 and software.

8 **SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

9       41.    In addition, based on my training and experience and that of computer

10 forensic agents that I work and collaborate with on a daily basis, I know that in most

11 cases it is impossible to successfully conduct a complete, accurate, and reliable search for

12 electronic evidence stored on a digital device during the physical search of a search site

13 for a number of reasons, including but not limited to the following:

14       a.    Technical Requirements:  Searching digital devices for criminal

15 evidence is a highly technical process requiring specific expertise and a properly

16 controlled environment.  The vast array of digital hardware and software available

17 requires even digital experts to specialize in particular systems and applications, so it is

18 difficult to know before a search which expert is qualified to analyze the particular

19 system(s) and electronic evidence found at a search site.  As a result, it is not always

20 possible to bring to the search site all of the necessary personnel, technical manuals, and

21 specialized equipment to conduct a thorough search of every possible digital

22 device/system present.  In addition, electronic evidence search protocols are exacting

23 scientific procedures designed to protect the integrity of the evidence and to recover even

24 hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is

25 extremely vulnerable to inadvertent or intentional modification or destruction (both from

26 external sources and from destructive code embedded in the system such as a "booby

27 trap"), a controlled environment is often essential to ensure its complete and accurate

28 analysis.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 14
USAO #2019R00539

1         b.     Volume of Evidence: The volume of data stored on many digital

2 devices is typically so large that it is impossible to search for criminal evidence in a

3 reasonable period of time during the execution of the physical search of a search site. A

4 single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A

5 single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000

6 double-spaced pages of text. Computer hard drives are now being sold for personal

7 computers capable of storing up to four terabytes (4,000 gigabytes of data.) Additionally,

8 this data may be stored in a variety of formats or may be encrypted (several new

9 commercially available operating systems provide for automatic encryption of data upon

10 shutdown of the computer).

11         c.     Search Techniques: Searching the ESI for the items described in

12 Attachment B may require a range of data analysis techniques. In some cases, it is

13 possible for agents and analysts to conduct carefully targeted searches that can locate

14 evidence without requiring a time-consuming manual search through unrelated materials

15 that may be commingled with criminal evidence. In other cases, however, such

16 techniques may not yield the evidence described in the warrant, and law enforcement

17 personnel with appropriate expertise may need to conduct more extensive searches, such

18 as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

19 determine whether it falls within the scope of the warrant.

20     42.     In this particular case, and in order to protect the third party privacy of

21 innocent individuals residing in the residence, the following are search techniques that

22 will be applied:

23     i.     Device use and ownership will be determined through interviews, if

24 possible, and through the identification of user account(s), associated account names, and

25 logons associated with the device. Determination of whether a password is used to lock a

26 user's profile on the device(s) will assist in knowing who had access to the device or

27 whether the password prevented access.

28     ii.     Use of hash value library searches.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 15
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1          iii.    Use of keyword searches, i.e., utilizing key words that are known to be

2   associated with the sharing of child pornography.

3          iv.    Identification of non-default programs that are commonly known to be used

4   for the exchange and viewing of child pornography, such as, eMule, uTorrent, BitTorrent,

5   Ares, Shareaza, Gnutella, etc.

6          v.    Looking for file names indicative of child pornography, such as, PTHC,

7   PTSC, Lolita, 3yo, etc. and file names identified during the undercover download of child

8   pornography.

9          vi.    Viewing of image files and video files.

10          vii.    As indicated above, the search will be limited to evidence of child

11   pornography and will not include looking for personal documents and files that are

12   unrelated to the crime.

13          43.    These search techniques may not all be required or used in a particular

14   order for the identification of digital devices containing items set forth in Attachment B

15   to this Affidavit.  However, these search techniques will be used systematically in an

16   effort to protect the privacy of third parties.  Use of these tools will allow for the quick

17   identification of items authorized to be seized pursuant to Attachment B to this Affidavit

18   and will also assist in the early exclusion of digital devices and/or files which do not fall

19   within the scope of items authorized to be seized pursuant to Attachment B to this

20   Affidavit.

21          44.    In accordance with the information in this Affidavit, law enforcement

22   personnel will execute the search of digital devices seized pursuant to this warrant as

23   follows:

24          a.    Upon securing the search site, the search team will conduct an initial

25   review of any digital devices/systems to determine whether the ESI contained therein can

26   be searched and/or duplicated on site in a reasonable amount of time and without

27   jeopardizing the ability to accurately preserve the data.

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 16
USAO #2019R00539

1         b.     If, based on their training and experience, and the resources

2 available to them at the search site, the search team determines it is not practical to make

3 an on-site search, or to make an on-site copy of the ESI within a reasonable amount of

4 time and without jeopardizing the ability to accurately preserve the data, then the digital

5 devices will be seized and transported to an appropriate law enforcement laboratory for

6 review and to be forensically copied ("imaged"), as appropriate.

7         c.     In order to examine the ESI in a forensically sound manner, law

8 enforcement personnel with appropriate expertise will produce a complete forensic

9 image, if possible and appropriate, of any digital device that is found to contain data or

10 items that fall within the scope of Attachment B of this Affidavit. In addition,

11 appropriately trained personnel may search for and attempt to recover deleted, hidden, or

12 encrypted data to determine whether the data fall within the list of items to be seized

13 pursuant to the warrant. In order to search fully for the items identified in the warrant,

14 law enforcement personnel, which may include investigative agents, may then examine

15 all of the data contained in the forensic image/s and/or on the digital devices to view their

16 precise contents and determine whether the data fall within the list of items to be seized

17 pursuant to the warrant.

18         d.     The search techniques that will be used will be only those

19 methodologies, techniques and protocols as may reasonably be expected to find, identify,

20 segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

21 this Affidavit.

22         e.     If, after conducting its examination, law enforcement personnel

23 determine that any digital device is an instrumentality of the criminal offenses referenced

24 above, the government may retain that device during the pendency of the case as

25 necessary to, among other things, preserve the instrumentality evidence for trial, ensure

26 the chain of custody, and litigate the issue of forfeiture.

27     45.     In order to search for ESI that falls within the list of items to be seized

28 pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 17
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  search the following items (heretofore and hereinafter referred to as "digital devices"),

2  subject to the procedures set forth above:

3          a.      Any digital device capable of being used to commit, further, or store

4  evidence of the offense(s) listed above;

5          b.      Any digital device used to facilitate the transmission, creation,

6  display, encoding, or storage of data, including word processing equipment, modems,

7  docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

8          c.      Any magnetic, electronic, or optical storage device capable of

9  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

10  memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

11  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

12          d.      Any documentation, operating logs and reference manuals regarding

13  the operation of the digital device, or software;

14          e.      Any applications, utility programs, compilers, interpreters, and other

15  software used to facilitate direct or indirect communication with the device hardware, or

16  ESI to be searched;

17          f.      Any physical keys, encryption devices, dongles and similar physical

18  items that are necessary to gain access to the digital device, or ESI; and

19          g.      Any passwords, password files, test keys, encryption codes or other

20  information necessary to access the digital device or ESI.

21                  **GENUINE RISKS OF DESTRUCTION OF EVIDENCE**

22      46.      Any other means of obtaining the necessary evidence to prove the elements

23  of computer/Internet-related crimes, for example, a consent search, could result in an

24  unacceptable risk of the loss/destruction of the evidence sought. If agents pursued a

25  consent-based interview of and/or a consent-based search of digital media belonging to

26  CHRISTOPHER SCOTT NEWCOMBE at the SUBJECT PREMISES, he could

27  rightfully refuse to give consent and subsequently destroy all evidence of the crime

28  before agents could return with a search warrant. Based on my knowledge, training and

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 18
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  experience, the only effective means of collecting and preserving the required evidence in

2  this case is through a search warrant.

3  **CONCLUSION**

4  47.    Based on the foregoing, I believe there is probable cause that evidence,

5  fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of

6  Child Pornography) and 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child

7  Pornography) are located at the SUBJECT PREMISES, as more fully described in

8  Attachment A to this Affidavit, as well as on and in any digital devices found therein.  I

9  therefore request that the court issue a warrant authorizing a search of the SUBJECT

10  PREMISES and on the person of CHRISTOPHER SCOTT NEWCOMBE for the items

11  more fully described in Attachment B hereto, incorporated herein by reference, and the

12  seizure of any such items found therein.

13

14

15  GEORGE LONG,

16  Affiant, Special Agent
    Department of Homeland Security

17  Homeland Security Investigations

18

19  SUBSCRIBED and SWORN to before me this 13th day of June, 2019.

20

21

22  PAULA L. MCCANDLIS

23  United States Magistrate Judge

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 19
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

**ATTACHMENT A**

**Description of the Property to be Searched**

a.      The physical address of the SUBJECT PREMISES is 33020 10 Avenue SW, Unit Q201 in Federal Way, Washington 98023.  The SUBJECT PREMISES is more fully described as a condominium located on the lower level of building "Q".  Building Q is located in the center of a large condominium complex.  It is gray in color and has white trim.  Four garage doors are located on the east side of the building and windows for the various residences are located above the garage doors.  A large "Q" appears on the east side of the building.  Entrances to the four residences located in building Q are on the north and south side of the building.  Unit Q201 is located on the south side of building Q.  A green door that provides entry into the residence has a sign attached to it that reads "201".

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



ATTACHMENT A - 1
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1      The search is to include all rooms, attics, basements, or other areas located in Unit

2 Q201, any parking spaces, garages, or storage spaces attached to or specifically assigned

3 to Unit Q201, as well as any digital device(s) found therein.

4

5

6                     Description of Person to be Searched

7 The person to be searched, CHRISTOPHER SCOTT NEWCOMBE, is a white male who

8 was born on XX/XX/1984.  He is approximately 5'10" tall and weighs approximately

9 175 pounds.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



ATTACHMENT A - 2
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES and on the person of CHRISTOPHER SCOTT NEWCOMBE.

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.      Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7.      Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8.      Any non-digital recording devices and non-digital media capable of storing images and videos.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9.     Digital devices and/or their components, which include, but are not limited to:

a.     Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above, including but not limited to computers, digital cameras, and smart phones;

b.     Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

c.     Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

d.     Any documentation, operating logs and reference manuals regarding the operation of the digital device or software;

e.     Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.     Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.     Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

10.     Evidence of who used, owned or controlled any seized digital device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

11.     Evidence of malware that would allow others to control any seized digital device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  as evidence of the presence or absence of security software designed to detect malware;

2  as well as evidence of the lack of such malware;

3       12.     Evidence of the attachment to the digital device(s) of other storage devices

4  or similar containers for electronic evidence;

5       13.     Evidence of counter-forensic programs (and associated data) that are

6  designed to eliminate data from a digital device;

7       14.     Evidence of times the digital device(s) was used;

8       15.     Any other ESI from the digital device(s) necessary to understand how the

9  digital device was used, the purpose of its use, who used it, and when.

10

11  **The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such**

12  **digital devices constitute instrumentalities of the criminal activity described above,**

13  **but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO #2019R00539

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970